CITY OF SIOUX CITY Appellant, v. SIMMONS HARDWARE COMPANY.

**Nuisance:** OBSTRUCTION OF WATER COURSE. In this action to abate
1  a nuisance alleged to have been created by defendant by the erection of a culvert or conduit, through which the water of a small stream was required to pass, it is held that the conduit is inadequate and so constructed as to afford an obstacle likely to obstruct the passage of the water.

**Municipal corporations:** NUISANCE: ABATEMENT: PARTIES. A city
2  has the right not merely as a private property owner but in behalf of the public to cause the abatement of an obstruction in a stream, the consequence of which is to damage or reasonably threaten injury to the neighboring property.

**Same:** USE OF STREAM BY A CITY: OBSTRUCTION. A city may make
3  use of a stream for the purpose of discharging into it through storm sewers the water collected from its streets in times of excessive rainfall; but any obstruction to such use of a stream, resulting in injury to property in the neighborhood and to the streets of the city, will constitute a nuisance.

**Same:** ORDINANCES: REASONABLENESS: BURDEN OF PROOF. A city may
4  enact a valid ordinance, which is reasonable in its provisions, prohibiting the erection of any building or other structure over a stream without leaving a specified area unobstructed for the

flow of water in the natural channel; and the burden of showing that the ordinance is an unreasonable regulation is upon the one who has violated its provisions.

**Same:** ENFORCEMENT OF ORDINANCES. While a city may not maintain a general equitable action to enjoin and abate a nuisance on the ground of injury to its citizens, yet under its general police power to prevent injury or annoyance from anything dangerous, offensive or unhealthy, and to cause any nuisance to be abated, it has power to prevent such injury by enforcing the regulations of an ordinance properly adopted; and this is especially true where the city itself owns the property imperiled by any unusual flooding of the stream.

**Same:** USE OF STREETS: RESTRICTIVE CONDITIONS: BURDEN OF PROOF. While an ordinance must be general in its nature and applicable to all persons in similar situations, yet a city having occasion in a proper exercise of its power to permit the use of a part of a street by a particular individual in the construction of a building, may impose as a condition of such use that a passage way for the water of a stream within the city shall be of·a specified size; and in a suit to abate as a nuisance an obstruction in the stream, because of a violation of the conditions imposed, the city need not show that the obstruction violating such conditions, which was intended for the protection of the general public, is a nuisance; but the individual guilty of such violation has the burden of showing that the condition is unreasonable and imposes restrictions which in no event are necessary for the public protection.

**Same:** EQUITABLE ENFORCEMENT OF CONDITIONS. A city owning a portion of a street, the public character of which has been terminated, may contract with an individual for the erection of a building thereon on condition that he shall construct an adequate passageway for the waters of a stream passing under the building, and may enforce such conditions in equity irrespective of the question of nuisance; there being no adequate remedy at law.

**Same:** ESTOPPEL. Where as in this case a city authorized by ordinance the private construction of a conduit of a specified size for the passage of a stream, and provided that it should be constructed under the plan of the city engineer and subject to his approval, but the defendant in constructing the same procured no plans of the engineer nor did he request or procure his approval of the structure, the city was not estopped from complaining that the conduit did not comply with the ordinance.

**Same:** OBSTRUCTION OF WATER COURSE: RELIEF. It appears in this

action that the conduit was so constructed as to obstruct the passage of the water, but that by a change in the method of supporting it, which might be done at a reasonable expense and also be made adequate for the passage of water, a destruction of the same and the building erected thereover will not be ordered, but defendant is required to reconstruct the conduit. On a petition for rehearing it is held however, that as the original opinion was predicated upon an ordinance imposing duties on the defendant the parties may arrange for a different method of taking care of the waters of a stream, and the city, if it so desires, may make a new regulation on the subject, compliance with which shall render maintenance of the building lawful so far as conformity with the ordinance is concerned. Evans, J., dissenting.

*Appeal from Woodbury District Court.*—HON. FRANK R. GAYNOR, Judge.

MONDAY, FEBRUARY 13, 1911.

ACTION to abate a nuisance alleged to have been created within the limits of the plaintiff city by the erection by defendant of a culvert or conduit through which the water of a small stream is required to pass, with the result, due to the insufficient size of said culvert or conduit, that at times of high water the streets have been and will in the future be flooded, to the injury of abutting property owners and to the injury of the city itself as the owner of buildings adjacent to said stream. It was also alleged that the defendant had, in constructing said culvert or conduit, violated the terms of the city ordinance under which its erection was authorized. On a hearing on the merits the court denied relief to plaintiff, and it appeals. *Reversed* and *remanded.*

*F. E. Gill, Sam Page,* and *F. W. Sargent,* for appellant.

*Ferris & Iddings, Shull, Farnsworth & Sammis,* and *Lewis S. Haslam,* for appellee.

McClain, J.—A stream called Perry creek, rising about fifteen miles north of Sioux City, flows through the city in a tortuous course substantially from north to south, and empties into the Missouri river within the city limits. Fourth street runs east and west, and where it crosses this street there is a bridge connecting it with West Third street. Just south of this bridge defendant's grantor in 1905 erected a warehouse, which defendant is still maintaining, extending across the stream, leaving for the passage under the building of the waters of the stream a conduit, composed of concrete walls and an overhead floor of concrete supported on I-beams of steel, five feet in depth. This conduit connects at its northern end with the city bridge, and was constructed under the authority conferred by a city ordinance by which the city purported to vacate and convey to defendant's grantor a strip of ground fourteen feet wide off the east side of Elm street, which is the street running approximately north and south to the west of and abutting the premises now occupied by defendant. The defendant was already the owner of the lots through which Perry creek ran south of Fourth street; and, making use of the additional ground taken from the east side of Elm street adjoining said lots, defendant's grantor proceeded to erect a building covering its lots and this additional ground, providing for the passage of the stream through and under said building as above described. The ordinance above referred to contained the provision that defendant's grantor, as owner of the property abutting upon the stream, was "authorized and empowered, in order to protect the said city, . . . to erect substantial stone or concrete walls on each side of Perry creek, extending from the south end of the main concrete abutments of said bridge, . . . along the banks of said creek southwesterly, . . . such walls to be at such distance apart as to leave a channel for Perry creek substantially the same width as now exists between

the concrete abutments of said bridge. And the said Haley & Lang Company (defendant's grantor) and their successors shall have the right to build across Perry creek at said place, supported by said walls, a building or buildings so constructed as to be strong and substantial, and not to interfere with the flow of the waters in said creek, and said walls shall be constructed under plans and specifications of the city engineer of Sioux City and subject to his inspection of the building thereof."

Although there was an unusual flood in Perry creek in the summer of 1908, after the building contemplated in the ordinance had been erected, no inadequacy in the conduit provided for the passage of the water in the stream under the building was disclosed. But in the summer of 1909 there was an unusual freshet, causing a still greater volume of water to pass through the conduit, and, as alleged by the city, the conduit proved inadequate, and the water backed up in the stream above the city bridge, so that it overflowed the high banks of the creek within the two blocks north of Fourth street and West Third street, respectively, and extended eastward and westward, to the damage, not only of property owners, but also to the damage of the streets of the city. The city asks that the defendant be required to either remove its building and conduit entirely from the bed of the creek or to enlarge the conduit to such an extent as to correspond to the natural channel of the creek; and in an amendment, setting out the ordinance above referred to, it alleges that defendant's grantor in the construction of the building and conduit did not comply with the terms of the ordinance, in that it constructed the walls of the conduit in such a manner as to make the channel substantially narrower than the width between the concrete abutments, and constructed the roof of the conduit in such a manner that the beams supporting it extend substantially lower than the top of the channel under the city bridge,

so the area remaining through which the water of the stream may pass is twenty-five percent less than that afforded for the passage of such water by the city bridge.

I. The defendant questions the right of the city to complain in this action of the conduit through defendant's building as a nuisance; contending, first, that as a mat-

1. Nuisance: obstruction of water course.

ter of fact the conduit in itself is sufficient for all such floods as are reasonably to be anticipated, and that the damage caused by the backing up of the water in the summer of 1909 was due to obstructions below the conduit, which were not within defendant's control, and to debris lodging above the city bridge. As to this question of fact, we find under the record that the debris lodging above the city bridge was not the cause of the overflow, as it appears that the waters of the stream extended beyond its high banks before such debris had accumulated at the city bridge, and there was sufficient outlet for the water below the conduit to have carried it off, had the conduit itself been sufficient to allow the water to pass through. It does appear that after the flood the conduit was found to be partly choked up by trees, timbers, and other debris, which had been caught above by the I-beams and thus prevented from passing through. This was not the fault of the city, but the fault rather of the construction of the conduit, which was not only inadequate in size, but by reason of the projection of the I-beams afforded an obstacle likely to cause the passage to be clogged up. Whether or not there would have been such clogging at this time, had this conduit been fully as large as the opening under the city bridge, we can not say; but we are satisfied that the inadequacy in size and the method of construction did tend to bring about the result which followed.

II. Defendant's contention that the city is not the proper party plaintiff to complain of the improper obstruction of the stream by defendant's building is without

merit. The city has the right, not merely as a private property owner, but in behalf of the public, to cause the abatement of the obstruction in a stream, the consequence of which is to damage or reasonably threaten injury to neighboring property. *Waterloo v. Waterloo, C. F. & N. R. Co.,* 149 Iowa, 129; 4 Pomeroy, Equity (3d Ed.), section 1349.

2. MUNICIPAL CORPORATIONS: nuisance: abatement: parties.

III. There might be some question whether, as an original proposition, we ought to hold the conduit under defendant's building to be so far insufficient for the passage of the waters of the stream that it should in this action be declared a nuisance and abated. We feel justified in suggesting, however, that while the flood of 1909 was unusual, and the volume of water in the street at this point perhaps greater than on any previous occasion as to which the witnesses testify, yet there was no unprecedented fall of water, such as that resulting from a cloudburst or like cause beyond the course of nature, and that the recent construction of storm sewers entering into the stream, probably brought down the water in greater quantity at that particular time than on previous occasions of high water. And it must be borne in mind that the city had the right to make use of this stream for the purpose of discharging into it such sewers, and for the purpose of relieving its streets quickly from such floods as might occur from even unusual, though perhaps not unprecedented, rainfall. Any obstruction to such use of the stream, resulting in general injury to property in the neighborhood and to the streets of the city, would unquestionably amount to a nuisance.

3. SAME: use of stream by city: obstruction.

But if the city, anticipating danger from the obstruction of this stream, had by general ordinance declared that no buildings or other structures over the stream should. be erected without leaving a specified area unob-

structed for the flow of the water in its natural channel, there could be no question, as we think, as to the validity of the ordinance, provided, of course, that it was reasonable, that is, within the scope of the general police powers of the city. And if such regulation had been adopted, the burden would certainly have been on one who had violated the provisions of the ordinance to show that the regulation was unreasonable; that is to say, he must show that his structure did not in any way imperil the safety of the public as to free passage of the water of the stream at any stage, resulting from causes which could in their nature and extent have been anticipated.

The city has in general the power "to prevent injury or annoyance from anything dangerous, offensive, or unhealthy, and to cause any nuisance to be abated." Code, section 696. It is true that we have held in *Ottumwa v. Chinn,* 75 Iowa, 405, the city can not maintain a general equitable action to enjoin and abate a nuisance on the ground of injury to its citizens. But that case recognizes the right of the city to enforce the regulations of its ordinances, and after an ordinance has been properly adopted, prohibiting the obstruction of a stream within the city limits for the purpose of preventing injury to its inhabitants, we see no reason why the city may not proceed in equity to enforce such regulation, by having the obstruction to the stream which violates the provisions of its ordinances abated as a nuisance. If the city, in the interests of its inhabitants, has not the right to institute such an action in equity, then in this case it may maintain the action as a private property owner, for certain buildings belonging to the city, located just north of the Fourth Street Bridge, are imperiled by any unusual flooding of the stream.

IV. No doubt it would be beyond the power of the city to provide by a general ordinance that a specific prop-

*(margin notes: 4. Same: ordinances: reasonableness: burden of proof. 5. Same: enforcement of ordinances.)*

erty holder such as the defendant should not erect and maintain a conduit of less than a specified capacity; for ordinances, like laws, should be general in their nature and applicable to all persons in similar situations. But in this case the city had a special ground for legislation, in that it had occasion within the scope of its powers to authorize defendant's grantor to use a portion of Elm street in the construction and support of its proposed building. Having this special occasion to legislate on the subject, it might properly impose as a condition a requirement that the conduit be of a specific size. The ordinance being, therefore, a proper one, and within the scope of the exercise of power on the part of the city, we see no reason why an obstruction in the stream such as is prohibited by the ordinance may not be treated as a nuisance and abated at the suit of the city, and we think that the burden is not upon the city to show that the obstruction which violates a condition of the ordinance intended for the protection of the general public is in its nature a nuisance, but rather upon the property owner who has violated the provisions of the ordinance intended for the protection of the public to show that the provision of the ordinance is unreasonable and imposes a restriction upon defendant which in no event and under no circumstances is necessary for the public protection.

6. SAME: private use of street: restrictive conditions: burden of proof.

But, without regard to the question whether the structure is a nuisance or not, the city, as the owner of a portion of Elm street, the public character of which has been terminated by proper vacation, contracted, as it had the right to contract, with defendant's grantor that title to such portion should pass only on a specified condition, which condition was imposed for the protection of the public, and we see no reason why the city, as a party to such contract, may not in equity require compliance by the de-

7. SAME: equitable enforcement of conditions.

·fendant with the conditions attached to his property when he acquired it. Such a negative specified enforcement of the terms of a contract is a proper exercise of equitable jurisdiction, where there is no adequate remedy at law. Pomeroy, Equity (3d Ed.), section 1341. Property owners of the city, even though injury to their property were threatened by a violation of the contract, might not, perhaps, be entitled to have it specifically performed. If the city, in the exercise of one of its powers, sees fit to impose a condition for the benefit of the public, we see no reason why it should not have the power to enforce the condition imposed.

V. Some question of estoppel on the part of the city is raised by the defendant in the pleadings and arguments; but we find nothing in the record to sustain such an estoppel. The ordinance provided that the conduit should be constructed under plans and specifications of the city engineer and subject to his inspection. It does not appear that defendant's grantor, before constructing the conduit, procured any plans and specifications from the city engineer, or that the engineer ever approved of the plans and specifications in accordance with which the conduit was constructed. He was not asked to make any inspection of the structure, and did not do so. By his mere failure to exercise any supervision during the construction of the building, and without any application to him by defendant's grantor to have such power of inspection exercised, he certainly could not prejudice the rights of the city, nor estop it from complaining that defendant's grantor had not pursued the method of construction pointed out by the ordinance.

8. Same: estoppel.

VI. A court of equity might well hesitate to specifically enforce the conditions of the ordinance by causing the destruction of defendant's building, unless it clearly appeared that such destruction was necessary to preserve the rights of the public and prevent disastrous consequences

to property owners. But it appears from the record that the I-beams, which project five feet below the top of the conduit, and to that extent obstruct the flow of the water through it, may be replaced by box beams furnishing adequate support to the building overhead, and allowing at least three feet additional space for water to pass through the conduit, at an expense of not to exceed $4,000 or $5,000. With this change the conduit will be as high as the city bridge which it abuts, and as wide at its upper end, although somewhat narrower at its lower end. Counsel for the city have indicated in argument that such a change would in their judgment be sufficient to protect the public against danger from any such flood as has heretofore occurred. This relief, we believe, would be proper, reasonable, and adequate, and we think that such relief should have been granted in the lower court.

*9. SAME: obstruction of watercourse: relief.*

The decree of the lower court is therefore reversed, and the case is remanded for a decree in compliance with the views expressed in this opinion. *Reversed* and *remanded.*

EVANS, J., dissenting.

### SUPPLEMENTAL OPINION.

### FRIDAY, MAY 12, 1911.

PER CURIAM.—In a petition for rehearing it is represented that an arrangement has been made between the parties by which a more satisfactory plan may be carried out for taking care of the waters of Perry creek in cases of flood. As the opinion is predicated upon an ordinance imposing duties upon defendant, we see no reason why the city may not, if it sees fit, in the public interest, make a new regulation on the subject, compliance with which shall render the future maintenance of its building law-

ful, so far as compliance with the ordinance is concerned. The case is remanded to the lower court for a decree in accordance with this opinion, or such decree as may be satisfactory to the parties in the case.

With this modification in the opinion, the petition for rehearing is *overruled*.